UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-10373-REK

| | |
|---|---|
| EARTHSOURCE, INC.,<br><br>Plaintiff<br><br>v.<br><br>THE TOWN OF RAYNHAM, GORDON D. LUCIANO, DONALD L. MCKINNON, RAYMOND W. PLATT, individually & as members of the Raynham Board of Health,<br><br>Defendants | DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNT IV OF THE COMPLAINT PURSUANT TO <u>FED.R.CIV.P.12(C)</u> |

Defendants Town of Raynham, Gordon Luciano, Donald McKinnon, and Raymond Platt hereby move for judgment on the pleadings pursuant to Fed.R.Civ.P.12(c) on Count IV of the Complaint.

As grounds therefor, the defendants rely upon the Memorandum of Reasons in Support of the Town Defendants' Motion for Judgment on the Pleadings filed contemporaneously herewith.

WHEREFORE, the defendants respectfully request that the Court dismiss Count IV of the Complaint.

DEFENDANTS,

By their attorneys,

*/s/ Mark R. Reich*
Mark R. Reich (BBO #553212)
Joseph L. Tehan, Jr. (BBO# 494020)
Katharine Goree Doyle (BBO# 634131)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

227938/METG/0532

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)(mail) on 9/29/04

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 04-10373-REK

| | |
|---|---|
| EARTHSOURCE, INC.,<br><br>Plaintiff<br><br>v.<br><br>THE TOWN OF RAYNHAM, GORDON D. LUCIANO, DONALD L. MCKINNON, RAYMOND W. PLATT, individually & as members of the Raynham Board of Health,<br><br>Defendants | MEMORANDUM OF REASONS IN SUPPORT OF DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNT IV OF THE COMPLAINT PURSUANT TO FED.R.CIV.P.12(C) |

I.  INTRODUCTION

Plaintiff Earthsource ("Earthsource") has filed a four count Complaint against the Town of Raynham ("Town") and Gordon D. Luciano, Donald L. McKinnon, Raymond W. Platt, in their individual capacities and as members of the Raynham Board of Health (collectively referred to hereinafter as "Board of Health"). The basis for the Complaint is a Site Assignment issued by the Board of Health for a wastewater treatment plant Earthsources proposes to place in Raynham. Earthsource complains it is not subject to Site Assignment, or to an order contained within the Site Assignment, which indicates that "no occupancy permit shall be granted until such time as an intermunicipal agreement between the City of Taunton and the Town of Raynham..." is amended or replaced. The order also states that Earthsource may build its facility prior to the amendment of the intermunicipal sewer agreement, at its own risk.

Counts I and III are statutory appeals pursuant to G.L. c.111 §147 of the Board of Health's action. Count II seeks declaratory judgment that the Noisome Trade Statute, G.L c.111 §143, does not apply to Earthsource's facility and therefore Site Assignment was inappropriate.

Count IV asserts that the Site Assignment and order within violates Earthsource's right to equal protection under the laws under the Fourteenth Amendment to the U.S. Constitution and Article 1 of the Massachusetts Declaration of Rights. Count IV also alleges that the Board of Health "acted to deny the plaintiff its unalienable right to enjoy and defend its liberties and to possess and protect its property" under Article 1 of the Massachusetts Declaration of Rights. While this allegation is rather vague, the defendants assume it refers to a violation of the defendants' due process rights.[1] Earthsource seeks redress for the violation of its civil rights through the Massachusetts Civil Rights Act ("MCRA").

The civil rights claims in Count IV are fatally flawed. Earthsource fails to identify any other parties similarly situated to support its claim that its right to equal protection under the law has been violated. Any procedural due process claim is barred by the post-deprivation remedy provided by G.L. c.111 §147, a remedy that Earthsource has availed itself of in Counts I and III. Earthsource has not pled sufficient facts to support a claim for a violation of its substantive due process rights, as such a claim has been strongly discouraged by the Courts in the context of local land use permits. Earthsource has also failed to identify any threats, intimidation or coercion used by the defendants so as to form the basis for a claim under the MCRA. In addition, the Town of Raynham is immune from liability under the MCRA, as are the individual defendants in their official capacities. Finally, all individual defendants are entitled to qualified immunity on Earthsource's civil rights claims.

Earthsource has therefore failed to state a claim upon which relief may be granted in Count IV and such count should be dismissed against all defendants.

---

[1] Earthsource also contends that the "defendants have knowingly and intentionally, and in bad-faith, have denied plaintiff its civil rights as secured by the U.S. Constitution, Massachusetts Constitution, and by the laws of Massachusetts." Complaint, ¶49. Such a broad and vague allegation cannot state a separate claim and should be treated merely as a repetitive recitation of earlier allegations.

2

II.    FACTS & PROCEDURAL HISTORY[2]

1. Earthsource owns and operates wastewater treatment plants that process septage from residential septic systems and food grease (mostly from restaurants). Complaint, ¶9. The design and operation of the facilties are governed by regulations promulgated by the Massachusetts Department of Environmental Protection ("DEP"). Id.

2. Earthsource proposes to place a facility off of Route 138 in Raynham. Id., ¶11. The property is zoned Industrial, where such a facility is an allowed use. Id. The facility would discharge effluent into the municipal sewer system, which would transport the sewage to a wastewater treatment plant in Taunton (the plant is owned by the City of Taunton). Id., ¶15. Raynahm and Taunton have an inter-municipal sewer agreement regarding the wastewater treatment plant. Id. An elected Board of Sewer Commissioners in Raynham has the exclusive power to enter into agreements that would amend or supercede the inter-municipal agreement. Id., ¶16.

3. On February 13, 2003, the Sewer Commissioners approved the plaintiff's application to DEP for a Sewer System Connection Permit. Id., ¶18.

4. On February 14, 2003, Earthsource submitted plans and specifications for the facility to DEP for review and approval. Id., ¶12. Earthsource also applied to DEP for a Sewer System Connection Permit. Id., ¶17.

5. In May, 2003, the defendants advised Earthsource that the facility required site assignment. Id., ¶24. Earthsource objected. Id. Nonetheless, on June 24, 2003, the defendants opened a public hearing on the matter. Id., ¶25. The public hearings continued until they closed on December 9, 2003. Id.

---

[2] The facts recited herein are taken from the averments of the complaint, and are accepted as true for the purposes of this motion only. See Coyne v. Somerville, 972 F.2d 440 (1st Cir. 1992).

3

6. On June 27, 2003, DEP held a public hearing for comments or objections to the facility and Sewer System Connection Permit. Id., ¶19. No objections or comments were received from the defendants, or anyone else. Id.

7. On December 8, 2003, DEP issued approval of the Facility and the Sewer System Connection Permit. Id., ¶14,20.

8. On December 23, 2003, the defendants issued a site assignment, which included findings that the facility would not result in a nuisance, would not be harmful or dangerous to public health ("The Board determines that existing regulatory safeguards that apply to the Facility provide for the public safety..[n]o offensive pest or vermin problems are anticipated due to the required pH level."), and would not be attended by noisome or injurious noises ("Provided the Facility is constructed and operated as stated herein, no offensive noise levels are expected to be generated by mechanical equipment or vehicular traffic.") or odors ("Provided the Facility is constructed an operated as stated herein, no offensive odors are anticipated."). Id., ¶29, Exhibit C. The site assignment included the following order:

> Due to the Facility's large daily treatment capacity of 99,500 gallons, no occupancy permit shall be granted until such time as an inter-municipal sewer agreement between the City of Taunton and the Town of Raynham – amending and/or replacing such an agreement which was previously executed by the City of Taunton and the Town of Raynham – has been authorized and executed. This restriction shall not prevent the proponent from obtaining a building permit and constructing the facility. If the proponent undertakes to construct the facility prior to the authorization and execution of such inter-municipal agreement, such undertaking is a proponent's own risk.

Id., ¶31.

9. Earthsource contends that the Board of Selectmen have been attempting to renegotiate the inter-municipal sewer agreement for years, despite the fact that the Sewer Commissioners are charged with that task. Id., ¶32. Earthsource complains that the Board of

4

Selectmen have used their other roles as Board of Health members to create an opportunity to usurp the power of the Sewer Commissioners and force renegotiation of the inter-municipal agreement. Id., ¶34.

II.  ARGUMENT

   A.  Motion for Judgment on the Pleadings Pursuant to Fed.R.Civ.P.12(c)

"'The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule (12)(b)(6) motion.'" Furtick v. Medford Housing Authority, 963 F.Supp. 64, 67 (D.Mass. 1997) (quoting Nedder v. Rivier College, 944 F.Supp. 111, 120 (D.N.H.1996)). The Court may grant a dismissal on the pleadings if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir.1991); Rivera-Gomez v. Castro, 843 F.2d 631, 635 (1st Cir.1988).

The court is not bound to accept as true conclusions of law or unwarranted deductions of fact. See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993). Where it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of her claims, dismissal is proper. See Ballou v. General Electric Co., 393 F.2d 398 (1st Cir. 1968). The pleading rules are "not entirely toothless," Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990) and the "minimal requirements are not tantamount to nonexistent requirements." Gilbert v. Cambridge, 932 F.2d 51, 62 (1st Cir. 1991). A plaintiff must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). The plaintiff cannot rely upon "subjective

5

characterizations or unsubstantiated conclusions." Fleming, 922 F.2d at 23. "Empirically unverifiable conclusions, not logically compelled, or at least supported by the stated facts," deserve no deference. United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992); Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989).

The deference due the allegations of a complaint does not extend to "self-serving generalities" or "unsubstantiated conclusions." Gilbert, 932 F.2d at 62.[3] "[O]nly when conclusions are supported by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, [do] 'conclusions' become 'facts' for pleading purposes." Id. Finally, to plead a justifiable case, a plaintiff must allege a "'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" AVX Corp., 962 F.2d at 113 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).

As specified below, Earthsource has failed a state a claim upon which relief may be granted in Count IV of the Complaint.

    B.    Earthsource's Procedural Due Process Claim is Barred By Law Because Earthsource Has A Post-Deprivation Remedy Under State Law

To the extent Earthsouce contends that it has somehow been deprived of procedural due process protected by the Massachusetts Declaration of Rights and the U.S. Constitution, it has failed to state a claim upon which relief may be granted. First, Earthsource admits in the

---

[3] "A reviewing court 'need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation,' Correa Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990), even when such phantoms are robed by the pleader in the guise of facts. We have been particularly insistent in section 1983 cases to require a fair degree of specificity -- a foundation of material facts -- to survive a motion to dismiss." Gilbert, 932 F.2d at 62 (citing Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983)), Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977), cert. denied, 434 U.S. 1077 (1978).

Complaint that it received notice and a hearing with respect to the order at issue. Second, Earthsource has a post-deprivation remedy in the form of an appeal under G.L. c.111 §147, an appeal it has utilized in this complaint in Counts I and III.

"[A] procedural due process claim is not actionable unless, *inter alia*, no adequate 'post-deprivation remedy' is available under state law." See Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir.1994); Burnham v. City of Salem, Mass., 101 F.Supp.2d 26, 35 (D.Mass. 2000). An incorrect interpretation of the law does not give rise to a deprivation of plaintiff's constitutional right to procedural due process, "so long as the state provides an adequate means of redress." Chiara v. Dizoglio, 248 F.3d 1126 (1st Cir. 2001) (quoting Herwins v. City of Revere, 163 F.3d 15, 18 (1st Cir.1998), cert. denied, 526 U.S. 1087 (1999)). The appeal under G.L. c.111 §147 therefore provides a legally appeal from the order at issue.

As Earthsource has an adequate post-deprivation remedy, its procedural due process claim is barred and must be dismissed.

    C.    Earthsource Has Not Pled Sufficient Facts to Satisfy the Standard to State A Claim Upon Which Relief May Be Granted For a Violation of its Substantive Due Process Rights

If Earthsource argues that its substantive due process rights under the Massachusetts Declaration of Rights and the U.S. Constitution have been violated, it has failed to state a claim upon which relief may be granted. In the substantive due process context, the protection afforded under Article 12 is co-extensive with that provided under the Fourteenth Amendment and no greater protection is provided. Walden v. Board of Registration in Nursing, 479 N.E.2d 665, 671 (Mass. 1985).

The United States Court of Appeals for the First Circuit and the Massachusetts Supreme Judicial Court have repeatedly expressed their reluctance to entertain substantive due process

7

challenges to land use decisions by local boards. See, e.g., PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991) ("This Court has repeatedly held…that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process."); Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, 1528 (1st Cir.1983) (alleging unreasonable delay on application for building permit); Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir.1982); see also Amsden v. Moran, 904 F.2d 748, 757 (1st Cir.1990) (alleging state licensing board is misuse of administrative process in refusing reinstatement of surveyor's license); Freeman v. Planning Board of West Boylston, 419 Mass. 548, 646 N.E.2d 139 (Mass. 1995) (reversing jury verdict of substantive due process violation against planning board), rev. denied, 516 U.S. 931 (1995). "Indeed, the First Circuit has held that denials, suspensions, and revocations of permits or professional licenses, including those involving procedural irregularity, do not ordinarily implicate substantive due process." See Fitzgerald v. Town of Kingston, 13 F.Supp.2d 119, 125 (D. Mass. 1999); Chongris v. Board of Appeals of Andover, 811 F.2d 38, 42 (1st Cir. 1987), cert. denied, 483 U.S. 1021 (1987).

A complaint pleads a substantive due process violation by a local administrative agency only if the facts alleged are "shocking or violative of universal standards of decency." Amsden, 904 F.2d at 757 (quoting Furtado v. Bishop, 604 F.2d 80, 95 (1st Cir.1979), cert. denied, 444 U.S. 1035 (1980)). The First Circuit has particularly required "conscience shocking" behavior to be established for a plaintiff to pursue a claim for substantive due process in the zoning context. See Licari v. Femizzi, 22 F.3d 344, 349 (1st Cir. 1994). The level of misconduct must be "stunning, evidencing more than humdrum legal error." Amsden, 904 F.2d at 754 n.5. It is not enough to show that the board "exceeded, abused or 'distorted' its legal authority," Creative

8

Env'ts, Inc., 680 F.2d at 833, or that it committed an outright violation of state law, Chiplin Enters., Inc. 712 F.2d at 1528.

In PFZ Properties, the First Circuit, reviewing the failure of a planning agency to act on an application for over four years, refused to consider this as "conscience shocking" activity. PFZ Properties, 928 F.2d at 31-32. In so ruling, the Court stated "[e]ven assuming that [the agency] engaged in delaying tactics and refused to issue permits for the...project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label." Id. Similarly, in Chiplin Enterprises, the First Circuit refused to find a substantive due process violation when a planning board, after granting preliminary approval to a development project, denied a building permit for the project. The Court stated "[a] mere bad faith refusal to follow state law in such local administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct error." Chiplin Enterprises, 712 F.2d at 1528. Finally, in Freeman, the Supreme Judicial Court reversed a jury verdict finding a violation of substantive due process where a Planning Board repeatedly delayed granting approval of a subdivision application over a number of years and refused to comply with orders of a Superior Court judge, again stating that the actions of the Planning Board, even if made in error or bad faith, did not violate the plaintiff's constitutional rights. Freeman, 646 N.E. 2d at 149.

The Board's imposition of a site plan assignment upon the facility, including the so-called prohibitive order, simply does not shock the conscience. Even under the most favorable interpretation to the plaintiff, the defendants made a good faith mistake of law in an attempt to address the large volume of additional material the proposed facility would add to the sewer

9

system. Earthsource has therefore failed to state a claim upon which relief may be granted for a violation of its substantive due process rights.

      D.      Earthsource Has Failed to State A Claim Upon Which Relief May Be Granted Under the Massachusetts Civil Rights Act ("MCRA")

To recover pursuant to the MCRA, a plaintiff's rights must be violated by "threats, intimidation or coercion." G.L. c. 12, §§11H and 11I. To violate the MCRA there must be, in addition to the deprivation itself, "something akin to duress which causes the victim to relinquish [her] rights." Butler v. RMS Technologies, Inc., 741 F. Supp. 1008, 1011 (D. Mass. 1990); see also Freeman v. Planning Bd. of West Boylston, 419 Mass. 548, 646 N.E.2d 139, cert. denied 516 U.S. 931 (1995); Webster v. Motorola, Inc., 418 Mass. 425, 637 N.E.2d 203 (1994). A direct deprivation of a secured right will not violate the MCRA if it "lacks the quality of coercion." Butler, 741 F. Supp. 15 1011; see also Longval v. Commissioner of Correction, 404 Mass. 325, 333, 535 N.E.2d 588, 593 (1989); Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 781, 506 N.E.2d 1152, 1158 (1987).

A "threat" is the "intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474, 631 N.E.2d 985, 990 (1994). "'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct." Id. Coercion is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Id. The imposition of site plan assignment, even with the so-called "prohibitive order" does not constitute threats, intimidation, or coercion on the part of the Board of Health. Instead, these actions were direct governmental action within the scope of the Board's jurisdiction and did not seek to coerce Earthsource to do or not do anything. See Pheasant Ridge, 399 Mass. at 781, 506 N.E.2d at 1158.

10

A decision-making body must be allowed to address the issues within the realm of its area of public service without exposure to civil right penalties any time its action is challenged. The actions of the Board of Health merely reflect its desire to acknowledge and accommodate a significant adjustment to the local sewer system. Benevolent & Protective Order of Elks, Lodge No. 65 v. Planning Bd. of Lawrence, 403 Mass. 531, 559, 531 N.E.2d 1233, 1250 (1988); Silvia v. Building Inspector of West Bridgewater, 35 Mass. App. Ct. 451, 455, 621 N.E.2d 686, 688 (1993) ("There must be a showing that the town officials acted so as to frighten, harass, or humiliate the [plaintiff].... The attempt by the town to vindicate rights which it reasonably thought the public possessed hardly constitutes that sort of conduct.").

If Earthsource is unhappy with the decision of the Board of Health, it has a remedy: an appeal to the state court via G.L. c.111 §147. Indeed, Earthcourse has availed itself of that remedy. The MRCA does not create "an independent right to vindicate an alleged wrong" which might have been or was the subject to an established statutory or regulatory remedy. See Mourandian v. General Electric Co., 23 Mass. App. Ct. 543, 548, 503 N.E.2d 1318 (1987); see also Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, 1527 & n.4 (1st Cir. 1983) ("claim that denial of a permit was improperly motivated, unsupported by an allegation of the deprivation of a specific constitutional right, simply raises a matter of local concern, properly and fully reviewable in the state courts [o]therwise, virtually every controversy... would be a constitutional case.").

As Earthsource has failed to plead any facts to support the allegation that the defendants used threats, intimidation or coercion to violate its civil rights, any claim pursuant to the MCRA against them should be dismissed.

11

E.  The Town and the Individual Defendants In Their Official Capacities Are Immune From Suit Under the MCRA

A municipality such as the Town of Raynham is not a "person" and, therefore cannot be subject to a claim under the MCRA. Howcroft v. Peabody, 51 Mass.App.Ct. 573, 591-592 (2001). The decision in Howcroft is applicable with equal force where public officials are named in their official capacities. Id. at 593. It is well established that a suit brought against municipal officers in their official capacities is tantamount to a claim against the municipality itself. Canney v. City of Chelsea, 925 F.Supp. 58, 69 (D.Mass. 1996) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Accordingly, Earthsource's entire claim under the MCRA must be treated as a claim against the Town, and dismissed against the Town and the individual defendants in their official capacities.

F.  The Individual Defendants Are Entitled to Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." Roldan-Plumey v. Cerezo-Suarez, 115 F.3d 58, 65 (1st Cir. 1997) (quoting Nereida-González v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993)); see also Wilson v. Layne, 526 U.S. 603, 609 (1999); Harlow v. Fitzgerald, 457 U.S. 800 (1982). The U.S. Supreme Court has emphasized the importance of deciding the qualified immunity defense "at the earliest possible stage in [the] litigation." Saucier v. Katz, 533 U.S. 194, 200-201 (2001). The same qualified immunity principles developed under the federal Civil Rights Act, 42 U.S.C. §1983, shield public officials from liability under the MCRA. See Duarte v. Healy, 405 Mass. 43, 47, 537 N.E.2d 1230, 1232 (1989); Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 595, 747 N.E. 2d.729, 746 (2001).

Two issues must be considered: (1) whether at the time of the alleged conduct there was a "clearly established" statutory or constitutional right that was violated; and (2) whether a reasonable person would have known that [his] conduct violated that right. See Frazier v. Bailey, 957 F.2d 920, 929 (1st Cir. 1992); Landry v. Mier, 921 F. Supp. 880, 884 (D. Mass. 1996).

"With respect to the first inquiry, the plaintiff bears the burden of demonstrating the existence of a clearly established right." Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992). Whether a right is clearly established by the plaintiff is a question of law for the Court. Landry, 921 F. Supp. 880, 884 (D. Mass 1996). "A right is not 'clearly established' unless, at the time the challenged conduct occurred, 'the contours of the right were sufficiently plain that a reasonably prudent state actor would have realized not merely that his conduct might be wrong, but that it violated a particular right.'" Id. (quoting Martinez v. Colon, 54 F.3d 980, 988 (1st Cir.1995)). In order to defeat government officials' invocation of qualified immunity as a defense, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right in light of the existing law, the unlawfulness must be apparent." Duca v. Martins, 941 F. Supp. 1281, 1287 (D. Mass. 1996) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (emphasis supplied).

The second inquiry considers whether a reasonable person would have known that his conduct violated that right, using the standard of objective reasonableness. See Bailey, 957 F.2d at 929. "The operative inquiry here is not whether the defendants actually abridged a plaintiff's rights, for the mere fact that a violation occurred is not enough to defeat qualified immunity unless it is further demonstrated that the defendants' conduct was unreasonable." Landry, 921 F.

13

Supp. at 885; see also Davis v. Scherer, 468 U.S. 183, 190 (1984); Quintero de Quintero, 974 F.2d at 228.

The United States Court of Appeals for the First Circuit has framed the issues to be considered by the Court:

> The classic question that a qualified immunity defense poses is whether the allegedly violated federal right was established with sufficient clarity that a reasonable government functionary should have conformed his conduct accordingly. See, e.g., Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (reiterating that qualified immunity is meant to shield public officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated"). In answering this question, a court must undertake an objective inquiry into the totality of the circumstances, with a view toward ascertaining whether the right allegedly infringed, articulated at an appropriate level of generality, was settled at the time of the public official's actions, and if so, whether the official's conduct was obviously inconsistent with that right. See id. at 638-40, 107 S.Ct. 3034. In the last analysis, then, qualified immunity purposes to protect government functionaries who could not reasonably have predicted that their actions would abridge the rights of others, even though, at the end of the day, those officials may have engaged in rights-violating conduct. See id. at 639-41, 107 S.Ct. 3034; see also Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (explaining that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

Camilo-Robles v. Zapata, 175 F.3d 41 (1st Cir. 1999)

The same qualified immunity principles developed under the federal Civil Rights Act, 42 U.S.C. §1983,[4] shield public officials from liability under the MCRA. See Duarte v. Healy, 405 Mass. 43, 47, 537 N.E.2d 1230 (1989); Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 595, 747 N.E. 2d.729 (2001). As discussed in greater detail in Section III.B-D, the conduct by the defendants did not violate any clearly established constitutional rights of the plaintiffs and no reasonable individual would have been aware that the defendants' conduct violated any clearly

---

[4] "Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." Roldan-Plumey v. Cerezo-Suarez, 115 F. 3d 58, 65 (1st Cir. 1997) (quoting Nereida-Gonzalez v. Tirado-Delgado, 990 F. 2d 701, 704 (1st Cir. 1993)).

14

established constitutional rights of the plaintiffs, the individual defendants are entitled to qualified immunity in their individual capacities and all claims against them should be dismissed.

III. CONCLUSION

WHEREFORE, the defendants respectfully request that this Honorable Court dismiss the Count IV of the Complaint against them.

DEFENDANTS,

By their attorneys,

*/s/ Katharine Goree Doyle*

Mark R. Reich (BBO #553212)
Joseph L. Tehan, Jr. (BBO# 494020)
Katharine Goree Doyle (BBO# 634131)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

22794438/METG/0532

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 9/29/04

15